IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-22 Erie |
| | ) | |
| DONALD RAY MAXWELL CATES | ) | |

**GOVERNMENT'S SUR-REPLY TO DEFENDANT'S**
**SUPPLEMENTAL BRIEF TO HIS MOTION TO SUPPRESS**

In his supplemental brief, Cates' arguments are two-fold: First, he argues that his statements to Clarksville Police Department Officer Kenneth Kennedy must be suppressed because Cates made the statements without having been advised of his Miranda rights. And, second, he argues that his statements to FBI Special Agent Jimmy Caudle must be suppressed because (1) Cates was interrogated without counsel despite Agent Caudle's knowledge that he was represented by counsel; (2) in the middle of the interrogation, Cates demanded to speak with a lawyer; and (3) Cates was denied his request for his medication. For the reasons that follow, and for those reasons set forth in the government's prior response (Doc. 30), Cates' motion to suppress should be denied.

**I.  Statements to Officer Kenneth Kennedy**

Officer Kennedy, a patrolman with the Clarksville, Arkansas Police Department, arrested Cates upon discovering that Cates was wanted on a warrant from Montana. (Tr. 6-7). While Officer Kennedy was transporting Cates to the Detention Center, Cates volunteered that he had met S.L. on the Internet and that she

was having problems at home with her father.  According to Cates, he had become close to S.L., and he just wanted to take her away from it.  He also stated that he had sexual assault charges for which he was in trouble even though he did not force the girls to have sex with him, that his life sucked, and that no one would listen to him.  He then lamented that he would probably not get to see S.L. again.  Cates argues that his statements to Officer Kennedy should be suppressed because Cates was not advised of his <u>Miranda</u> rights prior to making the statements.

Pursuant to <u>Miranda</u>, when the government conducts a "custodial interrogation", it may not introduce any statements made by the defendant during the interrogation prior to advising the defendant of the <u>Miranda</u> warnings.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966).  <u>Miranda</u> warnings are designed to protect against the evils of "custodial interrogation".  <u>Id.</u> at 481.  Therefore, the warnings only need be given "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in a significant way **and** is subjected to questioning."  <u>Id.</u> at 478 (emphasis added).

Here, while Cates was arrested and taken into custody, he was **not** subjected to questioning. (Tr. 8, 13-14).  Officer Kennedy testified that Cates volunteered, without prompting, the information he conveyed during the transport.  (Tr. 8).  At no point did Officer Kennedy initiate questioning of Cates.  Officer

2

Kennedy testified, "I did not Mirandize him. I wasn't questioning him." (Tr. 13). He further explained that he did not give Cates the Miranda warnings, because he "had no reason to", since he "didn't question him." (Tr. 14). There is no evidence of record to the contrary.

Pursuant to Miranda, it does not matter if Cates was in custody, if he was not interrogated by law enforcement authorities. The key is "custodial interrogation." In his argument, Cates focuses only on the custody aspect, while completely ignoring the interrogation aspect. But, in order for his argument to succeed, he needs both aspects. Since there was no interrogation, there was no requirement that Cates be advised of the Miranda warnings.[1] His motion, therefore, should be denied.

## II. Statements to Special Agent Jimmy Caudle

Cates argues that his statements to Agent Caudle should be suppressed because (1) Cates was interrogated without counsel despite Agent Caudle's knowledge that he was represented by counsel; (2) in the middle of the interrogation, Cates demanded to speak with a lawyer; and (3) Cates was denied his request for his

---

[1] In the "Introduction" section of his Supplemental Brief, Cates also avers that the Montana criminal cases are inextricably intertwined with the instant case and that the court-ordered appointment of counsel in Montana did not terminate and should have been honored pursuant to the "federal full faith and credit statute." (Doc. 36, p. 6). The Sixth Amendment right to counsel, however, is offense specific: "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced". McNeil v. Wisconsin, 501 U.S. 171, 176 (1991).

medication.

### A. Attorney Oaas' Facsimile

In his supplemental brief, Cates reiterates his argument that he was denied his right to counsel because Attorney Torger Oaas, who is representing Cates on his Montana charges, had sent a facsimile attempting to invoke Cates' rights for him and instructing law enforcement not to interview him. As the government outlined at length in its Response to Defendant's Motion to Suppress (Doc. 30), Cates' argument that he was denied his right to counsel is squarely foreclosed by Moran v. Burbine, 475 U.S. 412 (1986). Pursuant to Moran, Attorney Oaas' fax is irrelevant because it is an event occurring outside of Cates' presence and entirely unknown to him, and thereby could not have had any bearing on Cates' capacity to understand and knowingly relinquish his right to an attorney. Id. at 422. Furthermore, the privilege against compulsory self-incrimination is "a personal one that can only be invoked by the individual whose testimony is being compelled." Id. at 434, n.4. Thus, Attorney Oaas could not invoke Cates' rights for him via the facsimile. Id.

Cates has not cited any case law contrary to Moran, nor does any exist. Pursuant to Moran, Cates' argument fails, and his motion should be denied.

### B. Cates' "demand" for an attorney

Cates argues that in the midst of the interrogation, he

4

demanded to speak with an attorney. This is an incorrect statement of the facts. Rather, during the interview, when Agent Caudle asked Cates if he had sex with S.L., Cates stated that he wanted to speak with an attorney before answering that question. (Tr. 33). Agent Caudle then gave Cates the opportunity to invoke his right to an attorney by asking Cates if he wanted to speak "to an attorney now." (Tr. 33). He also asked Cates "if he [wished] to stop the interview at that time to confer with an attorney." In response to Agent Caudle's questions, however, Cates stated that he wanted to continue the interview without an attorney; he just did not want to answer that specific question. (Tr. 33). Nowhere within this exchange did Cates ever "demand" to speak to an attorney, nor is there any testimony from the suppression hearing supporting Cates' current claim that he demanded to speak with an attorney. (Tr. 44).

In any event, as discussed in the government's prior brief, (Doc. 30), Cates voluntarily waived his right to counsel and did not subsequently invoke his right to counsel during the interview.

**C. Cates' demand for his medication**

Cates also argues that he demanded his medication, and that the continuation of the interview after denying him his

5

medication warrants suppression of his statements.[2] Again, this is an incorrect statement of the facts, as Cates never "demanded" his medication. (Tr. 35, 44). In fact, Cates never stated that he needed the medication at that moment. (Tr. 35). For that matter, there is no evidence that Cates truly needed his medication at all. While Cates refers to his Motion to Suppress, (Doc. 27), which contains "identifiable information made by competent medical practitioners", who diagnosed him with borderline schizophrenia, bipolar disorder, tachycardia, migraines, and hypothyroidism, (Doc. 36, p. 8), he did not introduce any evidence at the suppression hearing to substantiate these claims.

Contrary to Cates' claims that he demanded or needed his medication or that he suffered from any medical condition, (a topic on which Cates chose to present no evidence), the uncontroverted testimony at the suppression hearing was that Cates did not appear to be in any physical or mental distress. (Tr. 21, 24, 28-29, 34, 36, 38).

In summary, Cates' statements were not the product of law enforcement coercion, and the totality of the circumstances, including length, location, and continuity of the interrogation;

---

[2] In the "Introduction" section of his Supplemental Brief, Cates also references the cold temperature of the interview room and his hunger. (Doc. 36, p. 8). As discussed in the government's prior response, (Doc. 30), Agent Caudle gave Cates a blanket and food, negating Cates' claim that Agent Caudle's conduct was coercive during the interview. (See also, Tr. 20, 23, 36).

6

the defendant's maturity, physical condition, and mental health; and whether the defendant was advised of his Miranda rights, compels a finding that Cates knowingly and voluntarily waived his right to counsel. See United States v. Swint, 15 F.3d 286, 289 (3d Cir. 1994).

**III. Conclusion**

Wherefore, the government submits that based upon the above argument, the government's prior response (Doc. 30), and the testimony at the suppression hearing, the defendant's motion to suppress should be denied.

Respectfully submitted,

ROBERT S. CESSAR
Acting United States Attorney


/s/ Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013