IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 9-22 E |
| | ) | |
| DONALD RAY MAXWELL CATES | ) | |

**DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT AND POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the defendant, Donald Ray Maxwell Cates, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files his Position With Respect to Sentencing Factors, and in support thereof sets forth as follows:

I. OBJECTIONS TO PRESENTENCE REPORT

A. Obstruction of Justice Enhancement.

Paragraphs 14 and 23 apply the obstruction of justice enhancement in U.S.S.G. § 3C1.1. The probation office claims the enhancement is proper due to Mr. Cates having S.L. delete his Myspace, myYearbook, and hotmail online accounts and S.L.'s discarding of her cellular telephone and Mr. Cates' discarding of his cellular telephone. None of these activities supports an obstruction of justice enhancement.

i. Deleting Mr. Cates' online accounts

Since Valentine's Day 2007, Mr. Cates had been involved in a long-distance relationship with S.L. At the time the relationship began S.L. was 12 years old and Mr. Cates was 19 years old. The relationship began on-line and continued both through on-line emailing and chatting and telephone calls. In April 2009, Mr. Cates was on bond in Montana on numerous charges of rape. The rape charges had gone to trial the previous year but on the third day of trial, at the request of the prosecution, the trial judge granted a mistrial because the prosecution had referenced a statement

it obtained from Mr. Cates in violation of Montana law during its opening statement. State v. Cates, 204 P.3d 1224 (Mont. 2009). After the mistrial was declared at the prosecution's request, Mr. Cates objected to a retrial, arguing that such a retrial would violate his right to be free from double jeopardy. Id. The Montana Supreme Court denied Mr. Cates' appeal on this issue on March 31, 2009. Id. In an obviously poor decision, Mr. Cates decided to flee Montana as he did not feel he could receive a fair trial.

When Mr. Cates decided to flee from Montana he made the decision to come to Erie, Pennsylvania, to meet S.L. After leaving Montana but prior to arriving in Erie, Mr. Cates spoke to S.L. on the telephone and gave her the passwords to his online accounts at myspace.com, myyearbook.com, and hotmail.com and told her to delete the accounts. Mr. Cates provided a written statement to the FBI and local law enforcement at the time of his arrest in Arkansas in which he explained that he had S.L. "delete all my accounts for me to try and keep the police from finding me and buying myself some time."

The investigation into the instant federal offense did not begin until April 13, 2009, the day after Mr. Cates arrived in Erie to meet S.L. Accordingly, S.L.'s deletion of Mr. Cates' online accounts occurred before the investigation of this case even began. Application note 1 to § 3C1.1 makes clear that the obstruction of justice enhancement can only apply to conduct that occurs prior to the start of the investigation of the instant offense of conviction "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."

Mr. Cates' statement given immediately after his arrest makes clear that he did not have S.L. delete the online accounts to thwart the investigation of the federal offense. Rather, Mr. Cates' statement makes clear that Mr. Cates' purpose was to make it more difficult for the Montana

2

authorities to find him so that he would have a head start in his attempts to flee from Montana authorities. As Mr. Cates did not direct S.L. to delete the online accounts in a purposefully calculated attempt to thwart the investigation of the federal offense of conviction, those actions cannot support the obstruction of justice enhancement. If the State of Montana decides to charge Mr. Cates with failing to appear it may be that this evidence could support an increased sentence in that case, but it cannot be used to increase the federal sentence as the conduct was not purposefully calculated to thwart the federal investigation which had not even begun.

In addition, application note 5 to § 3C1.1 states that avoiding or fleeing from arrest is not the type of activity to which the obstruction of justice enhancement is to apply. A Sentencing Guidelines application note "is binding unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with the section of the guidelines it purports to interpret." United States v. Booth, 432 F.3d 542, 548 n. 8 (3d Cir.2005). Mr. Cates' statement could not be any clearer that the reason behind deleting the online accounts was to avoid arrest. Accordingly, this conduct cannot support the obstruction of justice enhancement.

    ii.    Disposing of S.L.'s cellular telephone

After S.L. and Mr. Cates were taken into custody in Arkansas, S.L. gave a statement to the FBI and local law enforcement agents. In that statement S.L. explained why she disposed of her cellular telephone. S.L. explained:

> [S.L.] had taken her cellular telephone with her, telephone number \*\*\*-\*\*\*-\*\*\*\*, pre-paid Virgin Mobile service. [S.L.] had called her mother and advised that she was spending the night with a friend. The next morning, Monday, her mother called asking when she was coming home. [S.L.] did not want to deal with any more calls from her mother so she took the battery out of her phone and threw the battery and phone away in separate locations.

S.L.'s statement makes clear that her disposal of her telephone was done to avoid having to speak to her mother. This is corroborated by Mr. Cates' statements to the FBI and local law enforcement in Arkansas that "[S.L.'s] mother kept calling [S.L.'s] cell phone so Cates told [S.L.] to trash it."

Both S.L.'s and Mr. Cates' statements to law enforcement explain that the reason S.L. threw her cellular phone away was to avoid having to speak to S.L.'s mother. This was not a willful attempt to obstruct or impede the administration of justice. It was an attempt to avoid having to speak with S.L.'s mother.

    iii. Disposing of Mr. Cates' cellular telephone.

Mr. Cates told the FBI and local law enforcement in Arkansas that when he and S.L. left Erie he was carrying his cellular telephone. Mr. Cates stated that about six hours after leaving Erie he threw his phone into a river so that it could not be used to track his location. As discussed above, application note 5 to § 3C1.1 states that avoiding or fleeing from arrest is not the type of conduct which warrants application of the obstruction of justice enhancement. The Third Circuit has held that application notes are binding. <u>Booth</u>, 432 F.3d at 548 n. 8  Mr. Cates disposed of his cellular telephone so that authorities could not use the phone to track his position and then use that information to make an arrest. The plain language of the application note makes clear that Mr. Cates' efforts to avoid arrest by throwing away his cellular phone cannot support the obstruction of justice enhancement.

When the erroneous 2-level enhancement for obstruction of justice is removed from the guideline calculations, Mr. Cates' total offense levels drops from 36 to 34. An offense level of 34 and criminal history category of I results in a guideline range of 151 to 188 months.

## II. POSITION WITH RESPECT TO SENTENCING FACTORS

Mr. Cates pled guilty to transporting a minor, S.L., in interstate commerce with the intent that S.L. engage in any sexual activity for which any person can be charged with a criminal offense, to wit, statutory sexual assault, in violation of Title 18 Pennsylvania Consolidated Statutes Annotated, Section 3122.1, aggravated indecent assault, in violation of Title 18, Pennsylvania Consolidated Statutes Annotated, Section 3125(a)(8), and indecent assault in violation of Title 18, Pennsylvania consolidated Statutes Annotated, Section 3216(a)(8), using a means of interstate communication to persuade, induce, and entice S.L. to engage in the same sexual activity, and traveling in interstate commerce himself to engage in the same sexual activity. These charges are based on the fact that Mr. Cates used his computer and cell phone to persuade S.L. to have consensual sex with him, that he traveled to Erie in part because he intended to have consensual sex with S.L., and he took S.L. with him when he fled Erie and they engaged in consensual sex while they traveled. Because S.L. was under the age of 16 years, and Mr. Cates was more than four years older than S.L., their consensual sex constituted statutory rape under Pennsylvania law, i.e., 18 Pa.C.S.A. § 3122.1. The same conduct for the same reasons would have been an aggravated indecent assault and an indecent assault but those offenses would have merged into the statutory rape conviction. The statutory maximum penalty for statutory rape is ten years of imprisonment. Mr. Cates faces a guideline range, depending on the Court's ruling on the obstruction of justice issue, of anywhere between 12 ½ years to almost 20 years for committing a sex offense which has a statutory maximum penalty of ten years. That is wrong.

As a society we have determined that young teenagers are unable to make wise decisions when it comes to having sex. As a result virtually every state and the federal government have

passed statutory rape laws that make it a crime to have sex with young teenagers even if the sex is consensual. The charges Mr. Cates has pled guilty to all require that he acted with an intent to have a minor engage in sexual activity for which any person can be charged with a criminal offense. The government relied upon Pennsylvania's statutory rape law to satisfy this element. The government could not rely upon Pennsylvania's rape statute because S.L. consented to all of the sexual activity that occurred between her and Mr. Cates.

The Commonwealth of Pennsylvania has set the statutory maximum penalty for statutory rape at 10 years. There is no logic that can support a defendant receiving a longer sentence for traveling to have sex with a minor, or using his cell phone to convince the minor to have sex, or having the minor travel with him so they can have sex than the defendant would receive for actually engaging in the sex offense. It would not be seen as a mitigating factor in a sentencing for a statutory rape that the defendant lived next door to the minor so he could speak to her directly rather than over the phone or through email. Likewise, it would not be seen as a mitigating factor that the defendant lived in the same community as the minor so the defendant did not have to cross a state line to meet the minor to have sex. If those are not mitigating factors than the fact that a cell phone or email is used to communicate with the minor, or the defendant had to cross a state line to meet the minor should not be aggravating factors. They don't make the offense any better or worse.

To the extent the government argues this is a federal offense so federal law governs and the state statutory maximum is irrelevant, the Court should consider the fact that the federal statutory rape statute, 18 U.S.C. § 2243, has a statutory maximum penalty of 15 years of imprisonment. The guideline that applies to violations of § 2243 is U.S.S.G. § 2A3.2. If that guideline applied to Mr. Cates, he would have a base offense level of 18, and a 2-level enhancement for use of a computer.

If 5-levels were added under § 4B1.5 for being a repeat and dangerous sex offender and then 3 levels were subtracted for acceptance of responsibility, Mr. Cate's final offense level would be 22. An offense level 22 and a criminal history category of I results in a guideline imprisonment range of 41 to 51 months of imprisonment.

So, the federal government has said through Congress that the maximum penalty for a statutory rape committed on federal land is 15 years, and through the Sentencing Commission that if this offense had happened on federal land the applicable guideline range would be about 3 ½ to just over 4 years. And this is with a 5-level enhancement based in part on Mr. Cates' prior juvenile adjudication, so that fact is already taken into account. Without the 5-level enhancement the total offense level would be 24 to 30 months. It makes absolutely no sense that a defendant receives a longer sentence for traveling to commit an offense than he does for the offense itself. Likewise, it makes no sense that a defendant receives a longer sentence for using a cell phone or computer to facilitate an offense than he does for the underlying offense itself.

Prior to the passage of the Protect Act in 2003, § 2A3.2 would have been the guideline that applied to Mr. Cates' violation of § 2422(b). U.S.S.G. App. C amendment 664. When the Protect Act increased the statutory penalties for violating § 2422(b), using a means of interstate communication to induce a minor to commit a sex offense, the Sentencing Commission created § 2G1.3 to create new base offense levels which would coincide with the new 10-year mandatory minimum sentence required by the amended § 2422(b). Id. But at the same time Congress increased the penalties for violating § 2422, Congress left the penalties for § 2243, the statutory rape statute, unchanged. Id. Obviously, Congress believed the punishments being imposed in statutory rape cases were sufficient to punish that particular offense. So, the de-coupling of §

7

2422(b), when the underlying offense is statutory rape, is simply an unintended consequence of the Sentencing Commission having to respond to the Protect Act. But nothing in the Protect Act reveals Congressional intent to increase the punishment for statutory rape as Congress left the penalties in § 2243 untouched. All of this simply makes clear that the disconnect in sentences between using a cell phone to assist in the commission of a statutory rape and actually committing a statutory rape is not motivated by any intentional sentencing philosophy but rather is an unintended consequence of a massive guideline amendment that is 45 pages long in Appendix C and which has 6 pages of reasoning to explain the 45-page amendment.

The presentence report discusses some of Mr. Cates' mental health evaluations. Mr. Cates is submitting to the Court under separate cover a letter from Marla North, the licensed clinical professional counselor who worked with Mr. Cates during the 5 years between November 2004, right after the juvenile adjudication, and April 2009. Ms. North states that at the time she worked with Mr. Cates, "he did not fit the criteria of having a psychotic disorder. He fit the personality category of an anxious, immature, impulsive young man with traits of a schizotypal personality. He, hence, made poor decisions and demonstrated poor boundary control." Ms. North explains that schizotypal traits include: "odd beliefs or magical thinking, bizarre fantasies or preoccupations, suspiciousness, inappropriate affect, behavior that is odd, eccentric, and excessive social anxiety." The Mayo Clinic's website explains schizotypal personality disorder as

> People with schizotypal personality disorder are often described as odd or eccentric, and usually have few, if any, close relationships. They generally don't understand how relationships form, leading to severe anxiety and a tendency to turn inward in social situations.
>
> In schizotypal personality disorder, people also exhibit odd behaviors, respond inappropriately to social cues and hold peculiar beliefs.

http://www.mayoclinic.com/health/schizotypal-personality-disorder/DS00830

Ms. North's letter also includes the result of the Millon Clinical Multiaxial Inventory-III, a psychological test Ms. North administered and used during her treatment of Mr. Cates. While Ms. North cautions that the test is just one tool used to evaluate Mr. Cates and it should not be taken out of context, based upon her experience with Mr. Cates she agreed with the test's conclusions. More specifically, Ms. North agrees that Mr. Cates suffers from anxiety and depression. Furthermore, Ms. North agrees that Mr. Cates suffers from Post Traumatic Stress Disorder due to sex abuse he endured at age 5 and other family dysfunction. Ms. North also agrees with the test's conclusions regarding personality disorder traits that apply to Mr. Cates regarding his problems with forming meaningful relationships and his struggles with insecurity.

Finally, Ms. North states the Mr. Cates does not fit the criteria of a pedophile. Mr. Cates' primary sexual attraction is sexually developed girls. Ms. North explains that researching and testing has established that it is normal for an adult male to have sexual interest in a developed female. The DSM-IV-TR validates this observation by making the criteria for a diagnosis of pedophilia sexual attraction or behavior "with a prepubescent child or children (generally age 13 years or younger)." Furthermore, the DSM-IV-TR criteria for pedophilia contains a note stating: "Do not include an individual in late adolescence involved in an ongoing sexual relationship with a 12-or 13-year-old."

Title 18 U.S.C. § 3553(a) directs the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Statutory rape is a serious crime. Mr. Cates is going to receive a serious sentence. The best case scenario for Mr. Cates is a guideline range of 12 ½ years to 15 ½ years. A sentence in this range would be higher

9

than the statutory maximum penalty Mr. Cates would have faced had he been charged in state court with committing the statutory rape. A sentence in this range will be very near or slightly above the statutory maximum penalty set forth in federal law for a statutory rape committed on federal land. No informed observer could look at a sentence in this range and feel it was too lenient. A sentence above this range could only promote disrespect for the law as it would punish traveling to commit a statutory rape or using a computer or cell phone to facilitate a statutory rape as more serious than the actual statutory rape. Twelve and a half years in prison is sufficient to punish Mr. Cates for his commission of a statutory rape.

                                              Respectfully submitted,

                                              /s/ Thomas W. Patton
                                              Thomas W. Patton
                                              Assistant Federal Public Defender
                                              PA I.D. No. 88653