IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 09-22 Erie |
| | ) | |
| DONALD RAY MAXWELL CATES | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Cates' objection to the imposition of two offense levels for obstruction of justice is meritless. His instructions to the minor victim to delete all of his email and social networking accounts were plainly intended to thwart the investigation. Those instructions also led the victim to delete her accounts as well. Similarly, his disposal of his phone and the victim's phone was also intended to prevent authorities from finding Cates and the victim while Cates was continuing to commit federal crimes.

Cates should be sentenced to the highest possible sentence within his applicable guideline range. He has learned nothing from his juvenile adjudication for sexually assaulting a seven year old numerous times. Cates' conduct in this case began when he was still on probation. He began enticing the minor victim in this case when she was only twelve years of age. Finally, Cates became a fugitive in his pending sexual assault case in Montana when he fled while awaiting retrial and traveled to Erie to pick up the minor victim. All of these factors reveal a defendant with little respect for the criminal justice system who has great difficulty controlling his desire to engage in sex acts with minor females.

Obstruction of Justice

Cates' instructions to the minor victim to delete his email and social networking accounts are clearly obstruction of justice under U.S.S.G. § 3C1.1.  That section of the Sentencing Guidelines states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Application Note 1 for this section reads, in part:

> Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.

Application Note 4 provides examples of conduct that covered under U.S.S.G. § 3C1.1.  Example (D) is "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding ..."

The minor victim revealed to the FBI in Erie, during a May 1, 2009 interview, that Cates provided the minor victim his login and

password information and instructed her to delete the contents of his Hotmail email account and social networking accounts at MySpace and MyYearbook. The victim then deleted her online accounts as well. In a separate interview conducted by the FBI in Arkansas on April 16, 2009, Cates admitted that while traveling from Montana to Erie, he contacted the minor victim, provided her his passwords and user identifications, and then instructed her to delete all of his online accounts.

Cates also admitted that he discarded his own phone during his travel to Erie and instructed the minor victim to discard her phone while the two were traveling together from Erie to Arkansas. Cates revealed to the FBI that he did this because the minor victim's mother was repeatedly calling her daughter's phone and he was also aware that the two could be tracked through their phones.

The obstruction enhancement is applicable "if a defendant intentionally engages in conduct to obstruct, or to attempt to obstruct, the administration of justice and there is "some nexus between the obstruction and the federal offense." United States v. George, 317 Fed.Appx. 244, 246 (3d Cir. 2009)(obstruction enhancement upheld where defendant fled to Mexico and had his fingerprints surgically removed), quoting United States v. Jenkins, 275 F.3d 283, 289 (3d Cir. 2001). A defendant "need not be aware of the federal investigation at the time of the obstructive conduct." Jenkins, 275 F.3d at 291.

3

Numerous courts have held that the destruction of evidence justifies an obstruction of justice enhancement to the base offense level. The use of wiping software, which the defendant activated by turning on his computer while FBI agents were in his home, to destroy computer evidence was found to justify the obstruction enhancement in United States v. Knighton, 307 Fed.Appx. 673 (3d Cir. 2009). An obstruction enhancement was affirmed by the Second Circuit when a defendant deleted cell phone records just before being interviewed by government agents and then deleted emails after the interviews. United States v. Malki, 609 F.3d 503, 511 (2d Cir. 2010). The Eighth Circuit, in United States v. Cunningham, 593 F.3d 726, 730 (8th Cir. 2010), affirmed the district court's imposition of the obstruction of justice enhancement when the defendant ordered, prior to an auditor's visit, the destruction of employee time records which would have shown inconsistencies directly relevant to a pending investigation.

The district court in United States v. Garcia, 208 F.3d 1258, 1261-62 (11th Cir. 2000), imposed the obstruction enhancement on a defendant who asked his secretary to go to his apartment to remove money and cocaine and burn financial records, photographs of the murder victim and a map showing the victim's location, in an effort to cover up a murder. The Eleventh Circuit affirmed the enhancement noting that "[t]here is no requirement that defendant's obstructive acts occur subsequent to the formal commencement of an

4

investigation and we find no authority for that proposition." Id. at 1262. The Garcia court also reasoned that "[s]ending someone to destroy evidence located elsewhere is clearly an obstructive act and the sentencing judge was fully justified in so finding whether or not it actually hindered an investigation ... The key to a finding of obstruction is the intention of the actor, not the actual success of his obstructive acts." Id. (citation omitted). In United States v. Brown, 900 F.2d 1098, 1103 (7th Cir. 1990), the Seventh Circuit upheld an obstruction enhancement for a defendant, convicted of possessing stolen mail and conspiracy, who destroyed several incriminating checks upon being released on bond after her arrest.

Cates plainly obstructed justice by instructing the minor victim to delete his online accounts. Those accounts likely contained critical pieces of evidence, which the government was never able to obtain, because Cates and the victim corresponded for a lengthy period of time via the Internet. By deleting the accounts, Cates was able to prevent the government from securing their contents and reviewing them for valuable evidence. Cates obviously knew that the accounts contained critical information. That is precisely why he acted to make sure that law enforcement never had a chance to examine his accounts. Keeping this information away from the government was so important that Cates did not even wait until he arrived in Erie and met with the victim

to put his plan in motion. Cates' instructions also caused the minor victim to delete her accounts as well, thereby further preventing the government from obtaining additional evidence that was likely critical to the case.

Throwing away his own phone and instructing the victim to discard her phone were also obstructive acts. Both were undertaken in an effort to prevent law enforcement from finding Cates. Throwing away his own phone occurred while Cates was committing the federal crime of traveling with the intent to engage in illicit sexual conduct (18 U.S.C. § 2423(b)). Disposing of the victim's phone was done as Cates was committing the federal offense of transportation with intent to engage in criminal sexual activity (18 U.S.C. § 2423(a)) and it allowed that offense to be prolonged by preventing law enforcement from using the phone to track the two. The phones also contained valuable evidence of Cates' relationship with the victim because the two frequently communicated via the phones as well as on the Internet. Thus, getting rid of the two phones was done with the obvious intention of hampering the investigation.

Cates' current claim that he instructed the victim to delete his accounts merely in an effort to avoid apprehension in Montana ignores the obvious reality that the evidence destruction had a significant impact on his federal case and occurred as Cates was committing a federal crime. Cates has pleaded guilty to traveling

from Montana to Erie with the intent to engage in illicit sexual conduct. Fleeing Montana undetected was clearly not his only intent when leaving. It is fanciful to now argue that at the time he left Montana his sole goal in ordering the destruction of evidence was to cover his tracks from Montana authorities. Cates obviously knew that those accounts were a treasure trove of incriminating evidence that could be used against him. He also knew that once he took the victim away from her parents an investigation was sure to follow. Cates' attempt to compartmentalize his intentions to his advantage is thoroughly unconvincing.

Cates' claim that the victim threw her phone away simply to avoid speaking with her mother is contradicted by the evidence. Cates told the FBI in Arkansas that he knew law enforcement could track him and the victim by using the phone and that is a reason the victim's phone was discarded. The phone was discarded as Cates was committing a federal crime in an effort to allow him to continue committing that crime. That is obstructive conduct even if it was not the sole reason that the phone was discarded.

Cates' destruction of his own phone is also obstructive conduct because it occurred while he was committing a federal offense. Discarding the phone may have assisted his efforts to avoid the Montana authorities but it also assisted his efforts to continue traveling to Erie with illegal intent. Again, Cates' attempt to limit his intention to the only one that benefits him is

7

unconvincing and ignores the reality that Cates was acting with the intent to commit a federal offense when he left Montana.

**3553 Factors**

A review of the 3553 factors which the Court must consider in imposing sentence do not reflect well on Cates. Rather, those factors indicate that Cates should be sentenced to 262 months, the maximum within his applicable Sentencing Guideline range.[1]

**1) Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

Cates began his enticement of the victim when she was merely twelve in 2007. The two exchanged naked pictures and engaged in phone and cyber sex. Cates would request that the victim pose in different sexual ways. Cates was on probation for much of the time he spent enticing the victim over the Internet and on the phone. Unfortunately, Cates' conduct did not end with just long distance grooming. In April of 2009, just five months after his probation ended, Cates left Montana and became a fugitive from a pending sexual assault case there. He traveled to Erie and picked up the victim, who was 14 at the time, at her residence, after informing

---

[1] The presentence report calculates Cates' sentencing range, if 2 levels are assessed for obstruction of justice, as 188 to 235 months. This is incorrect because Cates should have been assessed at least two criminal history points because he committed the enticement offense at count four of the indictment while he was on juvenile probation, which terminated well into 2008. The indictment charges Cates with beginning the commission of that offense in August 2007, well before his probation terminated in 2008. Therefore, Cates was still on probation when he committed the offense at count four of the indictment and, as a result, should be placed in Criminal History Category II.

8

the victim that he was coming and instructing her to delete his online and email accounts and prepare to leave with him.  Shortly after Cates arrived in Erie and picked up the victim, the two engaged in sex acts behind a Walmart near the victim's house.  The two then traveled all the way to Arkansas primarily by obtaining rides from truckers.  During their travels Cates and the victim had sex numerous times.[2]  Upon arrival in Arkansas, Cates did not turn himself in.  Rather, he was arrested for hitch hiking with the victim and even then he tried to avoid arrest by providing a false name and tussling with the arresting officer.

These facts do not reflect favorably on Cates.  He spent almost two years preying upon and grooming a girl who was only twelve when the enticement started.  He then took that girl away from her parents, thwarted their efforts to contact their daughter and repeatedly engaged in sex acts with the victim.  What's worse, he enticed the victim while on probation for a horrific series of sexual assaults on a seven year old.  Cates then decided to flee

---

[2] The victim's supposed consent to the sexual activity is not mitigating. Consent is not a defense to any of Cates' offenses in this case. United States v. Abad, 350 F.3d 793, 798 (8th Cir. 2003); United States v. Wise, 278 Fed.Appx. 552 (6th Cir. 2008).  In Abad, the district court released the defendant, who had traveled across state lines to have sex with a thirteen year old, pending trial.  The government appealed and the Eigth Circuit reversed finding that the minor's willing participation did not mitigate the danger to the community posed by the defendant's release. Id.  The defendant's crime of violence was not mitigated because minors are incapable of lawful consent. Id.  The law assumes that an adult "has the maturity and self-control to say 'no' to a willing or even solicitous" minor. Id.

9

from Montana while his retrial on another sexual assault case was pending. Cates did not stop there. He instructed a minor to destroy evidence and destroyed evidence himself. Cates obviously has little respect for the rules and cannot be trusted to lead a law abiding life in the future.

> **2) Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment**

Cates' offenses are extremely serious. He began enticing the victim when she was 12 and transported her halfway across the country while he repeatedly had sex with her. Cases involving minor victims demand significant sentences because they involve the most vulnerable segment of our society. A sentence which reflects that minors need special protection will promote respect for the law. A sentence of 262 months will justly reflect all of the aggravating aspects of Cates' conduct and background.

> **3) Deterrence and Protection from Further Crimes of the Defendant**

Cates' juvenile adjudication in a very serious sexual assault case did nothing to deter his conduct in this case. Indeed, he enticed the victim while still on probation. He thought nothing of fleeing Montana while awaiting disposition of his pending case. Cates has demonstrated that the incredibly lenient treatment he received in the past had no impact on him. Much more serious punishment is necessary to deter him now. We do not want to imagine how his behavior will escalate if he is not sufficiently

deterred from future crimes.

A sentence of 262 months will also send the important message to the community that these types of crimes against minors will not be handled lightly and those who commit these offenses will forfeit their freedom for a very long time. Such a message is important in our current society when children are increasingly targeted for abuse.

Cates' reliance on a counselor's opinion from several years ago, before he was convicted for these federal offenses, is unavailing. Cates is not charged with being a pedophile. Why does it then matter that he claims to not be one? Does it give anyone comfort that Cates prefers minor females that are a little bit older? It is highly unlikely that a psychology opinion arrived at before he committed these egregious offenses would remain unchanged.

As an alleged victim of abuse in his formative years, Cates should know better than anyone how destructive that abuse can be. Obviously he did not care as he selfishly pursued his own troubling desires with little regard for the impact on others. Cates learned nothing from that previous counseling which only occurred after he repeatedly abused a seven year old. In light of Cates' repugnant behavior in this case, and his troubling history, a sentence of 262 months in jail and lifetime supervised release is appropriate and necessary.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


/s/ Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013